# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

PATTI MARINE ENTERPRISES INC.,

    Plaintiff,

    v.                                                   Case No.: 3:15cv293-RV/CJK

MORAN TOWING CORPORATION,

    Defendant.

_____/

## ORDER

    The defendant, Moran Towing Corporation ("Moran"), has filed two separate motions for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure (docs. 49 and 51). The plaintiff, Patti Marine Enterprises Inc. ("Patti"), has filed responses in opposition (docs. 62 and 66).

**I. Standard of Review**

    Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to prove the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

*Case No.: 3:15cv293-RV/CJK*

Summary judgment is inappropriate "[i]f a reasonable factfinder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact[.]" *Allen v. Board of Public Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). It is "genuine" if the record, viewed as a whole, could lead a reasonable fact finder to return a verdict for the non-movant. *Id.* In considering a motion for summary judgment, the non-movant's evidence is to be believed and all reasonable inferences drawn in its favor. *See Trucks Inc. v. United States*, 234 F.3d 1340, 1342 (11th Cir. 2000) (quoting *Anderson, supra*).

## II. Background

The facts pertinent to summary judgment can be stated briefly. These facts are either undisputed or, if disputed, resolved in the non-movant's (Patti's) favor where supported by evidence in the record.

Moran is in the tugboat business. In early September 2013, it was in the process of negotiating a charter contract with a company named "Trafigura" to provide it with an integrated tug and barge. The parties eventually reached an agreement (either orally or via letter of understanding) that the vessel would be delivered to Trafigura and put in service on or before June 30, 2015.[1] The agreement was for a guaranteed five-year deal, but it included an option for Trafigura to modify the contract if Moran failed to deliver the vessel on time.

---

[1] Moran did not enter into and execute a formal written charter agreement with Trafigura until months later, but Moran's Vice President of Engineering Sean Perreault testified that the parties had either an oral agreement or "letter of understanding or some other document" as of September 2013. *See* Deposition of Sean Perreault, dated April 13, 2016 (doc. 55-1), ("Perreault Depo.") at 20.

*Case No.: 3:15cv293-RV/CJK*

On September 16, 2013, Moran entered into a shipbuilding contract with Patti for construction of the tug that Moran was planning to provide to Trafigura. Under the terms of the contract, Patti was to build and deliver the tug to Moran by February 15, 2015.[2] If it was not delivered by that date (subject to any extensions necessitated by change orders or properly-reported *force majeure* events), the contract provided that Moran would be entitled to liquidated damages of $4,000 per day from February 16, 2015, through March 31, 2015, after which the damages increased to $8,000 per day. The barge—which was being constructed by a shipbuilder in Wisconsin—was going to be separately delivered to Moran for integration with the tug on May 1, 2015.

While the tug was still under construction, there were a series of delays caused by numerous change orders requested by Moran (between 60-86 of them) and myriad *force majeure* events (including, *inter alia*, the death of a shipyard worker in January 2015 that led to an investigation by OSHA and caused the shipyard to shut down, and a gear manufacturer being "quite late" in delivering parts for the tug—parts that turned out to be defective[3]). Patti delivered the tug on June 26, 2015, more than four months late, after which Trafigura reduced its original charter contract with Moran from five years to two. A dispute thereafter arose between Moran and Patti regarding assessment of liquidated damages (purportedly owed to Moran for the delivery delay) and unpaid invoices (purportedly owed to Patti under the terms of the shipbuilding contract). The parties apparently tried to negotiate and resolve their dispute but to no avail.

---

[2] The delivery date was actually February 1, 2015, but the contract allowed a two-week grace period.

[3] Incidentally, it is undisputed that Moran chose that particular gear manufacturer and *required* Patti to use them. *See* Perreault Depo. at 142.

*Case No.: 3:15cv293-RV/CJK*

Patti filed this case on July 1, 2015. It sought in its original complaint "the full sum of $510,000, reflecting the unpaid balance due under the shipbuilding contract." This $510,000 was the same amount that signatories for the parties had discussed via an email exchange the prior month, in June 2015, during pre-suit negotiations. Moran answered the complaint and asserted a counterclaim seeking the liquidated damages, to which Patti answered and raised various affirmative defenses.

Patti subsequently filed a motion to amend its complaint to seek an additional $500,000 in damages. Relying on the June 2015 email exchange, Moran opposed the motion on the ground that the parties agreed "in writing and in unambiguous language to cap the damages claimed at the original amount pled — $510,000." I rejected this argument and granted Patti's motion to file an amended complaint. Thereafter, Moran moved to dismiss the amended complaint, repeating its prior argument (verbatim) that the parties had agreed "in writing and in unambiguous language to cap the damages claimed at the original amount pled — $510,000." I once again rejected the argument, explaining that:

> There are many sub-issues and factual unknowns at this point that cannot be resolved on a motion to dismiss, including whether the parties had entered into a legally binding partial settlement agreement, and, if so, whether the agreed upon "cap" was a limit on damages or just a limit on collectability.

The case then proceeded to discovery—which is now closed—and Moran has filed the two pending motions for partial summary judgment.

### III. Discussion

In its first motion (titled "Accord and Satisfaction"), Moran essentially repeats (for a third time) its argument that any claim for damages beyond $510,000 is barred

by the June 2015 email "agreement" reached by the party signatories. This argument must be rejected yet again. For all the reasons stated in Patti's persuasive response in opposition (doc. 62), I cannot say—as a matter of law—that the parties entered into a binding contract to waive any damages *claim* in excess of $510,000.[4]

As for its second motion (titled "Liquidated Damages Contractual Provisions"), Moran is seeking partial summary judgment on certain of Patti's affirmative defenses to the counterclaim, to wit: Patti's contention that the February 15th delivery date was extended by change orders and *force majeure* events (affirmative defense three); and its contention that liquidated damages are barred by the contract and void as "punitive penalties" (affirmative defenses six and eight).

After full review, and for the reasons pointed out in Patti's response (doc. 66), summary judgment has to be denied. I agree with Patti that there are genuine disputed issues of material fact in the record as to whether the delivery date for the vessel was justifiably delayed due to the numerous change orders and *force majeure* events. And I cannot say as a matter of law that Patti did not comply with the terms of the contract with respect to notifying Moran of the delays and "Act of God" events. To be sure, as detailed in Patti's opposition, viewing all of the facts in Patti's favor (as I must at this stage of the case), there is evidence in the record that Moran was properly advised of all the delays.

---

[4] Viewing the evidence (and drawing all inferences) in its favor, Patti correctly argues that the emails show ongoing negotiations, not an agreement on all material terms. And furthermore, to the extent that there was an "agreement," the parties did not necessarily agree to waive *damages* in a civil action beyond $510,000, but, rather, they agreed not to enforce any potential *arbitration award* in excess of that amount. Patti also correctly argues that the "Protocol of Delivery and Acceptance" certificate on which Moran has additionally relied—which merely states that Patti delivered the boat "free and clear of all liens, claims and encumbrances"—only means the vessel could not be seized. It says nothing to prevent Patti from asserting *in personam* claims for damages beyond $510,000.

*Case No.: 3:15cv293-RV/CJK*

Nor can I say as a matter of law that the contract's liquidated damages provision is valid and non-punitive. Under New York law (which Moran says controls this case), parties have the right to specify in a contract the damages to be paid in the event of a breach, as long as the damages are not unconscionable and contrary to public policy. *Rattigan v. Commodore International, Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990). Such damages are appropriate "where the exact damages are uncertain and incapable of being ascertained except by conjecture." *Perma-Stone Bi Cty. Corp. v. Ackerman*, 15 Misc.2d 640, 641 (N.Y. Sup. Ct. 1959). If the clause is merely intended to operate in lieu of contract performance, it will be held a liquidated damages clause and may be enforced by the courts. *Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977). If, however, it is intended "to operate as a means to compel performance, it will be deemed a penalty and will not be enforced." *See id.* According to New York law, "*any reasonable doubt as to whether a provision constitutes an unenforceable penalty or a legitimate liquidated damages clause should be resolved in favor of a construction which holds the provision to be a penalty.*" *NCSPlus, Inc. v. WBR Mgmt. Corp.*, 37 Misc.3d 227, 235 (N.Y. Sup. Ct. 2012) (emphasis added). If the court determines the clause to be in the nature of a penalty, the plaintiff (or counter plaintiff) will be limited to its actual damages. *See, e.g., Perma-Stone Bi Cty. Corp. supra*, 15 Misc.2d at 641 (citing multiple cases).

Moran contends that the liquidated damages clause was intended to compensate it for its anticipated (but indeterminate) losses. Patti notes, however, that if the clause is valid and enforceable, that means the damages clock started to run—indeed, Moran insists that it started to run—on February 16, 2015. But Moran's president, Edward Tregurtha, has essentially conceded that when the contract was signed, Moran knew it would not sustain any monetary loss at all from February 15, 2015 (the date the tug

*Case No.: 3:15cv293-RV/CJK*

was originally supposed to be delivered) through May 1, 2015 (the date the barge was to be delivered).[5] Viewing the facts in Patti's favor, at the time the parties entered into the contract, Moran's president knew (as he testified at deposition) that as long as the tug was delivered by May 1, 2015, Moran "would not have been slowed down in [its] ability to present the integrated unit to [Trafigura]" by June 30, 2015. And yet, Moran put in the contract a provision that purports to impose *substantial* liquidated damages beginning on February 16th, more than two months before the tug was actually needed and before Moran would sustain any monetary loss. Patti persuasively argues that:

> If the liquidated-damage clause were truly designed to *compensate* Moran for expectable damages, the clause wouldn't have charged liquidated damages until some date in May. Because the clause begins charging liquidated damages at least 2½ months before the vessel was truly needed, it does not reflect a reasonable estimate of the actual damages that could be anticipated from a breach. If the clause were enforced, by May 1, liquidated damages of $412,000 would already be incurred. As such, the clause is a penalty provision and is unenforceable.

Strengthening this conclusion is the fact that Sean Perreault *repeatedly* testified that part of the reason for the liquidated damages clause was to "incentivize" Patti to finish the job by February 15th. *See, e.g.,* Deposition of Sean Perreault, dated June 16, 2016 (doc. 56-1), at 10 (Moran was "looking for some protection, some incentive for

---

[5] Tregurtha admitted at deposition that up until May 1, 2015, "there was no monetary damage" and "no monetary loss." And after this dispute arose (but before the litigation was filed), he sent an email to Bill Muller, Moran's Senior Vice President of Corporate Services, in which he (Tregurtha) said that he would—at that point in time—"be willing to waive damages prior to May 1 as we would not have been able to do anything with the unit prior to then anyway." Consequently, if the provision is held to be a valid liquidated damages clause, Moran will be entitled to recover a large amount for the total delay ($872,000), almost half of which ($412,000) is for the delay up through May 1, even though it has been conceded that Moran suffered absolutely no monetary loss during that time.

*Case No.: 3:15cv293-RV/CJK*

the yard to deliver as per the agreement"); *id.* at 20 (it "obviously" wanted to provide "incentive for the yard to complete the project"); *id.* at 24 (Moran considered amounts it thought would be "fair values to incentivize the yard to deliver the vessel in a timely fashion so that we can, in turn, meet our obligation with our customer"); *id.* at 26-27 (it ultimately decided on the $4,000 to $8,000 per day increase because it wanted "to further incentivize the yard to deliver the vessel"). Thus, it is apparent that the clause was intended—at least in part—"as a means to compel performance." *Brecher, supra*, 430 F. Supp. at 106.

That is not to say that subjectively wanting to provide "incentive" to complete a job renders a liquidated damages clause a penalty *per se.* In *Bates Advertising USA v. 498 Seventh*, 7 N.Y.3d 115 (2006), for example, the New York Court of Appeals rejected a landlord's contention that a liquidated damages clause was unenforceable merely because the lessee's attorney had testified that the provision "was intended to 'incentivize' the landlord, and to provide 'a club over his head to make sure he gets the work done.'" *Id.* at 120. As the court said: "[T]he prospect of damages in the event of breach may always be said to encourage parties to comply with their contractual obligations. Liquidated damages are not transformed into a penalty merely because they operate in this way as well, so long as they are not grossly out of scale with foreseeable losses." *Id.*; *see also GFI Brokers, LLC v. Santana*, 2009 WL 2482130, at *7 (S.D.N.Y. 2009) (citing *Bates* and noting that "such subjective intent is of little probative value in assessing the reasonableness of [a liquidated damages] provision").

What is significant in our case, however, is the fact that Moran's vice president admitted that the provision was intended—at least in part—to "incentivize" Patti to complete the tug (by imposing substantial damages) *coupled* with the fact that Moran apparently knew when the contract was drafted that the damages clock would start to run more than two months before it would sustain any damages *at all*. On this point,

*Case No.: 3:15cv293-RV/CJK*

*Priebe & Sons Inc. v. United States*, 332 U.S. 407, 68 S. Ct. 123 (1947), is instructive. The plaintiff in that case contracted with the federal government to deliver dried eggs (for shipment to England and Russia) between May 18 and May 28, 1942. Prior to that 10-day period, however, plaintiff was required to have the eggs inspected and certified for weight. Per the terms of the agreement, the government was entitled to liquidated damages if that certification was not timely accomplished—even if the certification was later achieved before the eggs were needed and before the government sustained any monetary loss. In holding that the provision was a penalty (not a valid liquidated damages clause) the Supreme Court explained:

> It . . . is apparent that the only thing which could possibly injure the Government would be failure to get prompt performance when delivery was due. We have no doubt of the validity of the provision for 'liquidated damages' when applied under those circumstances. But under this procurement program delays of the contractors which did not interfere with prompt deliveries plainly would not occasion damage. That was as certain when the contract was made as it later proved to be. Yet that was the only situation to which the provision in question could ever apply. Under these circumstances this provision for 'liquidated damages' could not possibly be a reasonable forecast of just compensation for the damage caused by a breach of contract. It might, as respondent suggests, have an in terrorem effect of encouraging prompt preparation for delivery. But the argument is a tacit admission that the provision was included not to make a fair estimate of damages to be suffered but to serve only as an added spur to performance. It is well-settled contract law that courts do not give their imprimatur to such arrangements. All provisions for damages are, of course, deterrents of default. But an exaction of punishment for a breach which could produce no possible damage has long been deemed oppressive and unjust.

*Case No.: 3:15cv293-RV/CJK*

*Id.* at 412-13 (citations omitted); *see also City of Rye v. Public Serv. Mut. Ins. Co.*, 346 N.Y.S.2d 163, 166 (2d Dep't 1973) (quoting case with approval).

If the provision at issue was truly intended to compensate Moran for reasonable but indeterminate monetary loss, it would have been drafted to apply to delivery of the tug *after* May 1, 2015 (when Moran knew it would begin to sustain damages), and not two and a half months *before* (when Moran knew "we would not have been able to do anything with the unit . . . anyway"). If it had been limited in that way, we might be talking about a very different case. But it did not, so we are not.

## IV. Conclusion

For all these reasons, the defendants' motions for partial summary judgment (docs. 49 and 51) must be, and are, DENIED.

DONE and ORDERED this 28th day of September, 2016.

/s/ Roger Vinson  
ROGER VINSON  
Senior United States District Judge