# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

PATTI MARINE ENTERPRISES, INC.,

    Plaintiff,               CASE NO: 3:15-CV-00293-MCR-CJK

vs.

MORAN TOWING CORPORATION,

    Defendant.
_____/

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE OPINION TESTIMONY OF ALAN CAMPBELL MCMILLAN AND SUPPORTING MEMORANDUM OF LAW

The Defendant, MORAN TOWING CORPORATION, ("MORAN"), through undersigned counsel, moves to exclude the testimony of Alan McMillan, and states:

1. One of the issues in this case is the proper number of "force majeure" days to allow Patti to extend the delivery date of the contract for the vessel.

2. Plaintiff has listed, as a fact witness, Alan Campbell McMillan. Mr. McMillan was deposed on January 17, 2017.

3. Mr. McMillan is an extremely well qualified expert in OSHA matters. According to his deposition, Mr. McMillan has been listed to:

> *Q. Okay. Purpose for your deposition today is for me to figure out what you're going to say at trial.*
>
> *A. Okay.*
>
> *Q. What was your involvement, if any, with the Patti Marine versus Moran dispute?*
>
> *A. My involvement with Patti Marine occurred at probably 2:30 on Tuesday, January 20th, when Frank Patti called me and told me that they had had a serious incident at the shipyard, and would I come over and assist him.*

Deposition of Alan McMillan, page 4 lines 1-11.

Mr. McMillan further clarified his purpose at trial:

> *Q. I understand your purpose for being called in this trial is to set forth the incident that occurred on -- I believe it was January 20th?*
>
> *A. (Nods head up and down.)*
>
> *Q. 2015?*
>
> *A. Correct.*

Deposition of Alan McMillan, page 9 lines 13-18.

4. Mr. McMillan owns Alan McMillan & Associates, a consulting firm that addresses OSHA incidents.

5. Mr. McMillan's testimony included his opinion on the total impact to the Plaintiff as a result of the incident.

*Q. What do you believe the impact to be on the shipyard as a result of the fatality?*

*A. Seven-and-a-half days.*

*Q. How do you determine that?*

*A. I have done a -- what I believe to be a --based on my experience in the safety-health business and large and small catastrophic accidents and smaller ones, and having been there almost every single day for those six months, I believe that the first half day, obviously, of the day of the accident was lost.*

*All of the next day was lost. And on the days that -- the days for the few -- for the next several weeks following that, productivity, in my opinion -- not my opinion, but my -- based on my professional working knowledge was that it was about 85 percent of its normal activity.*

*And it got back into what I would call normal shipyard activity of being there, observing the workers, observing the managers, observing the activities of the yard probably around the first of April. Excuse me. Around the end of March, somewhere in that time frame, and then was disrupted substantially again towards the end of the OSHA investigation for at least*

3

*another full week in late May, when the OSHA compliance officer was clearly beginning to complete his investigative file and came back to reinterview numerous supervisors, Mr. Patti, and others.*

Deposition of Alan McMillan, page 19 line 5 – page 20 line 6.

6. This testimony is pure expert opinion.

7. Although Mr. McMillan is obviously well qualified to provide such opinion testimony, Mr. McMillan was not disclosed as an expert. See Plaintiff's Supplemental Rule 26(a)(1) disclosure, listing only expert Alan B. Nierenberg with the report of Mr. Nierenberg, attached hereto as Exhibit A.

8. In fact, Plaintiff's expert Alan Nierenberg has provided testimony in this exact issue:

*Q. Example No. 5, death of a valued employ. Do you know how many days the shipyard was actually closed due to that death?*

*A. I believe the remainder of the day of the incident and the following day.*

Deposition of Alan Nierenberg, page 86 lines 13-17

*Q. Shipyard accident. That's the death we discussed?*

*A. Yes.*

*Q. I think you said there were four days that were beyond the control of Patti?*

*A. Yes.*

Deposition of Alan Nierenberg, page 101 lines 1-6.

9. As Plaintiff has listed an expert to address the OSHA death, and that expert has been deposed on that issue and provided opinion testimony, Plaintiff should not be permitted to call an additional non-disclosed expert to provide additional opinion testimony on this issue.

WHEREFORE, Defendant respectfully requests this Court grant the Motion in Limine and prevent Alan McMillan from testifying in this trial.

## **MEMORANDUM OF LAW**

**A. The Standard for Admissibility of Expert Testimony.**

Rule 702, Fed. R. Evid., defines the prerequisites for expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

*(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;*

*(b) the testimony is based on sufficient facts or data;*

*(c) the testimony is the product of reliable principles and methods; and*

*(d) the expert has reliably applied the principles and methods to the facts of the case.*

Fed. R. Evid. 702.

### B. Mr. McMillan's Testimony Would be Cumulative

Although Mr. McMillan's testimony would meet the test for admissibility under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), his testimony can still be excluded by the Court by applying Rule 403. Rule 403 states "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jur., <u>See, e.g.</u>, <u>Hull v. Merck & Co., Inc.</u>, 758 F.2d 1474, 1477 (11th Cir.1985) (per curiam)(finding that admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed.R.Evid. 702"); <u>see also</u> <u>United States v. Stevens</u>, 935 F.2d 1380, 1399 (3d Cir.1991)(finding expert testimony properly excluded because its probative value was outweighed by concerns of "undue delay, waste of time, or needless presentation of cumulative evidence").

### C. Mr. McMillan was not Properly Disclosed as an Expert Witness

Even if Mr. McMillan did not intend to testify on the same subject matter as Plaintiff's disclosed and deposed expert witness Alan Nierenberg, Mr. McMillan

should still be excluded as Plaintiff failed to disclose Mr. McMillan as a witness until the Pre-Trial Conference.

Rule 37(c)(1), Fed.R.Civ.P., states that Court may enforce the disclosure requirements of Rule 26(a)(2) "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." <u>Yeti By Molly, Ltd. v. Deckers Outdoor Corp</u>., 259 F.3d 1101, 1106 (9th Cir.2001). Rule 37(c)(1) provides, in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

As Mr. McMillan was not properly disclosed by the Plaintiff, he should not be permitted to testify as to his opinion regarding the OSHA investigation or the reasonable credit due to the Plaintiff as a result of that investigation at trial.

### D. Conclusion

Accordingly, Defendant move this Court to exclude any and all expert opinion testimony offered by Mr. McMillan on behalf of Plaintiff, and grant such other and further relief as the Court deems appropriate.

## CERTIFICATION OF CONFERENCE WITH OPPOSING COUSNEL

Pursuant to N.D. Fla. Loc. R. 7.1(B), the undersigned attorney for Defendant certifies that he has conferred with Plaintiff's counsel in good faith to resolve the issues underlying this Motion and the parties do not agree.

## CERTIFICATION OF WORD COUNT

Pursuant to N.D. Fla. Loc. R. 7.1(F), the Defendant certifies that this memorandum consists of 1,390 words not including the case style, signature block, and certificate of service.

RESPECTFULLY SUBMITTED this 20th day of March, 2017.

    /s/James L. D'Andrea
C. Ryan Eslinger, B.C.S.
Florida Bar No. 0634859
reslinger@miltonleach.com
James L. D'Andrea
Florida Bar No. 932401
jdandrea@miltonleach.com
MILTON, LEACH, WHITMAN,
 D'ANDREA & ESLINGER, P.A.
3127 Atlantic Boulevard
Jacksonville, Florida  32207
Telephone: (904) 346-3800
Facsimile:   (904) 346-3692
*Attorneys for Defendant*

# **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on March 20, 2017 I uploaded the foregoing to the Clerk of the United States District Court for filing via the CM/ECF system, and that a true and correct copy of the foregoing has been furnished via electronic service to all CM/ECF system participants.

             /s/James L. D'Andrea
             Attorney