IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PATTI MARINE ENTERPRISES INC.,

    Plaintiff,

v.	Case No.: 3:15cv293-RV/CJK

MORAN TOWING CORPORATION,

    Defendant.
_____/

# ORDER

Now pending before the court is the plaintiff's motion *in limine* to exclude any evidence of consequential damages—specifically, damages related to the defendant's reduced charter agreement with a third party, Trafigura (doc. 96). The defendant has filed a response in opposition (doc. 100). To the extent the damages arising out of the reduced charter with Trafigura are consequential damages, they are indeed barred as the contract expressly provides that:

> Notwithstanding any provision of this Contract, neither party will be liable to the other for indirect, consequential or punitive damages arising from or relating to this Contract or to the parties' performance or attempted performance thereunder.

The parties dispute, however, whether the damages at issue qualify as consequential damages under the law of New York.

"New York contract law distinguishes between two kinds of damages, general and consequential." *International Cards Co. Ltd. v. MasterCard International Inc.*,

2016 WL 7009016, at *3 (S.D.N.Y. 2016) (citing *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) (applying New York law), *Biotronik A.G. v. Conor Medsystems Ir., Ltd.*, 11 N.E.3d 676, 679–80 (N.Y. 2014)). Determining whether damages are general or consequential can sometimes be difficult. *See Biotronik, supra,* 11 N.E.3d at 680 ("The distinction between general and special contract damages is well defined but its application to specific contracts and controversies is usually more elusive.") (citation omitted). In *First Niagara Bank N.A. v. Mortgage Builder Software, Inc.*, 2016 WL 2962817 (W.D.N.Y. 2016), the district court surveyed the applicable law and provided the following guidance in a similar factual situation:

> Niagara challenges [certain specific requested] damages as consequential, which it contends are not permitted under the Service Agreement. Under New York law, two types of damages may generally be pled in contract cases: (1) general damages and (2) consequential damages. "A plaintiff is seeking general damages when he tries to recover the value of the very performance promised." *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) (internal quotation omitted). Consequential damages "seek to compensate a [non-breaching party] for additional losses (other than the value of the promised performance) that are incurred as a result of the [breaching party]'s breach." *Id.* at 175 (citation omitted). Under the Service Agreement, both parties explicitly waived certain categories of damages, including "indirect, special, punitive, consequential, or incidental damages." (Service Agreement at ¶ 13.) Such a provision is generally enforceable under New York law, provided it is not a contract of adhesion or otherwise in contravention of public policy. *See Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436, 643 N.E.2d 504, 507 (N.Y. 1994)). Because MBSI makes no argument that the liability limitation is not enforceable, the question is whether the damages that MBSI seeks are permitted under the limited terms of the Service Agreement.

New York State's highest court has delineated the issue of what constitutes consequential damages as follows: "The distinction at the heart of these cases is whether the lost profits flowed directly from the contract itself or were, instead, the result of a separate agreement with a nonparty." *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 808, 11 N.E.3d 676, 681 (N.Y. 2014). The Second Circuit, applying New York law, has similarly stated:

> Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost."

*Tractebel Energy Mktg., Inc.*, 487 F.3d at 109. Put another way, "'consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties...'" *Roneker v. Kenworth Truck Co.*, 977 F. Supp. 237, 240 (W.D.N.Y. 1997) (quoting *Petroleo Brasileiro, S. A., Petrobras v. Ameropan Oil Corp.*, 372 F. Supp. 503, 508 (E.D.N.Y. 1974)); *see also Carco Grp., Inc. v. Maconachy*, 383 Fed. Appx. 73, 75 (2d Cir. 2010) (consequential damages "result when the non-breaching party's ability to profit from related transactions is hindered by the breach").

*Id.* at *7-8; *accord International Cards Co., supra,* 2016 WL 7009016, at *3 (unlike general damages, which is "money that the breaching party agreed to pay under the

contract," consequential damages "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach"—such damages will include "loss of profits on collateral business arrangements") (citations omitted).

That is not to say, however, that any and all lost profits arising from third party agreements are consequential damages. To be sure, as the New York Court of Appeals stated in *Biotronik*: "This distinction [between whether the lost profits flowed directly from the contract or, instead, were the result of a separate agreement with a nonparty] does not mean that lost resale profits can never be general damages simply because they involve a third-party transaction. Such a bright-line rule violates the case-specific approach we have used to distinguish general damages from consequential damages." 11 N.E.3d at 681-82 (citing cases). Rather, the question is (on a case-specific basis) whether there is any evidence that "necessarily or logically leads to the conclusion that the parties contemplated that the [breaching party] would assume liability for [the non-breaching party's lost profits]." *See, e.g., Kenford Co., Inc. v. County of Erie*, 537 N.E.2d 176, 179 (N.Y. 1989); *id.* ("'[T]he commonsense rule to apply is to consider what the parties would have concluded had they considered the subject. The evidence here fails to demonstrate that liability for loss of profits over the length of the contract would have been in the contemplation of the parties at the relevant time.'") (emphasis in the original; citation omitted).

In short, whether the defendant's lost profits arising out of the reduced charter contract with Trafigura are consequential or general damages will depend, in part, on the admissible evidence relevant to the parties' contemplation at the formation of the contract between Patti and Moran. To that extent, the plaintiff's motion *in limine* to exclude any mention of damages relating to defendant's reduced charter agreement with Trafigura (doc. 96) must be, and is, DENIED.

DONE and ORDERED this 27th day of March, 2017.

                                                /s/ Roger Vinson
                                                ROGER VINSON
                                                Senior United States District Judge